523 So.2d 688 (1988)
Julius HOLLEY, Appellant,
v.
STATE of Florida, Appellee.
No. BO-252.
District Court of Appeal of Florida, First District.
March 30, 1988.
*689 James L. Harrison, Jr. of Tromberg, Shore, Harrison & Safer, Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen., and Royall P. Terry, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
BOOTH, Judge.
This cause is before us on appeal from appellant's conviction for sexual battery under Section 794.011(3), Florida Statutes, a life felony. Appellant presents numerous issues for our consideration, which can be summarized into the four general categories that follow.
1. Questions concerning the testimony of Dr. Sanford A. Mullen Jr., an expert pathologist, regarding the results of paternity blood tests.
2. Questions about the victim's testimony and prior statements, including her testimony that the child was born prematurely.
3. Questions relating to the testimony of Detective Branch concerning inconsistent accounts given by victims of sexual battery.
4. Questions about requested jury instructions.
The facts are that in late 1984, the 15-year-old victim was employed to work at the 65-year-old appellant's barbecue business. The business was connected to appellant's house. On the morning of the offense charged, appellant directed the victim to fold some laundry in his bedroom. The victim testified that appellant followed her to his room, produced a pistol, and forced her to have sex with him at gunpoint. The victim further testified that appellant threatened to kill her if she told anyone.
Thereafter, in April 1985, the victim told her mother after she became noticeably pregnant. The victim's mother reported the attack to the police. Investigating Officer Hallam later testified that the victim's mother told him that the victim did not report the rape earlier due to appellant's threat to kill her. The victim subsequently delivered her baby two months prematurely, and blood tests established appellant's paternity to a high degree of probability. Appellant, however, testified that he had no sexual contact whatever with the victim. There was no issue of consent, and it was not a defense in the case.
At trial, Dr. Sanford A. Mullen Jr. was qualified as an expert pathologist and testified that the probability that appellant fathered the victim's child was 98.2 percent and possibly higher. The doctor's opinion was based on the results of HLA (human leucocyte antigen) paternity blood tests. The trial court considered and rejected various challenges to the laboratory procedures used, the blood bank's certification status, and Dr. Mullen's testimony. We affirm the trial court's rulings on these points and note that appellant has not produced a shred of evidence indicating that any significant errors were made in the tests' administration or the calculation of their results. We also note that appellant was able to extensively cross-examine Dr. Mullen on the basis of his opinion in interpreting the tests and find no reversible error in the trial court's refusal to allow certain hypothetical or cross-examination questions. Appellant also claimed that impotence or impairment prevented him from fathering the child. However, his former girlfriend testified that she had sex with him on numerous occasions during the months in question.
On appeal, appellant contends that the laboratory report listing the results of the HLA tests should not have been admitted into evidence because it was hearsay. The objection was not made on those grounds at trial, and the issue is not preserved for appeal. Further, we note that the report was cumulative of the evidence given in greater detail in Dr. Mullen's testimony.
Appellant sought to impeach the victim's testimony by introducing evidence that the victim gave inconsistent versions *690 of the attack. Twice, the victim told police officers she had been sexually battered two weeks before Christmas. At trial she testified that the attack occurred around Thanksgiving. The victim also told the investigating detective that she quit work the day after the incident, when she actually continued to work for several weeks. When asked why she did not enter the name of a father on the child's birth certificate, the victim explained that Assistant State Attorney Al Brooke[1] had told her mother not to give the name of the father "until the [trial] was over with." Later, Brooke testified at a hearing on a motion for new trial that he did not remember speaking to the victim about the birth certificate, although it was "possible." Brooke was not asked whether he had spoken to the mother.[2]
The principal defense at trial was the victim's credibility. The crime was not reported when it occurred, and appellant denied any sexual contact with the victim. Appellant's main strategy was to discredit the victim's testimony. One area of appellant's attack concerned the victim's waiting for months to call police. During the State's case-in-chief, the victim testified that appellant had threatened to kill her if she told. This threat, she said, insured her silence until pregnancy made silence impossible. Later during the State's case, Investigating Officer Michael Hallam was permitted to testify, over hearsay objection, to essentially the same facts. Hallam confirmed that:
Her mother is actually the one that I guess got her to tell what happened... . She reported that she had been having a weight gain and her mother had questioned her about it and she felt like she had to tell her mother what happened because she thought she was probably pregnant.
Any error of the trial court in allowing Officer Hallam's testimony was harmless[3] because there was no real issue about when the crime was reported, and appellant offered no testimony indicating that the crime was reported at that time for reasons other than visible pregnancy.
Similarly, the error, if any, in allowing Detective Larry Branch to testify that many sexual battery victims give inconsistent accounts of the crime was harmless.[4] Appellant's attempts to discredit the victim by showing inconsistency in her testimony on details relating to the offense were essentially irrelevant and obviously futile in the eyes of the jury. Regardless of any inconsistencies in the victim's testimony, the blood tests established a better than 98-percent probability[5] that appellant fathered the victim's child, and the time of birth of the child was consistent with the time of the offense testified to by the victim at trial. Thus, the child born of the rape bore witness against the perpetrator. Other evidence, including the victim's description of appellant's particular behavior[6] during the offense, a description consistent *691 with other evidence, strongly supported the victim's testimony.
Appellant contends that prejudicial error occurred when testimony about the baby's premature birth was put before the jury. Citing Aho v. State, 393 So.2d 30 (Fla. 2d DCA 1981), appellant maintains the evidence was introduced improperly merely to solicit the jury's sympathy for the victim. However, appellant put at issue the date of the child's conception by introducing testimony that the crime did not occur when the victim said it did. Information concerning the date of birth and whether the child was "at term" or premature was material to establishing the date of conception. The jury could not accurately infer the date of conception from the date of birth unless the jury was also aware that the baby was born prematurely. The trial court correctly allowed the State to establish that the birth was premature, thereby corroborating the victim's version of the crime. Unlike Aho, supra, the probative value of the information substantially outweighed any danger of unfair prejudice or confusion in this case.
We find no error in the trial court's refusal to give all appellant's requested instructions. An instruction that appellant was on trial for sexual battery rather than paternity was unnecessary, as the record reveals that there was no reasonable likelihood that the jury could have believed that the opposite was the case. In this connection, we note that appellant was convicted of sexual battery with use or threat of use of a deadly weapon, not of having consensual sex with a minor. There was also no reversible error in failing to give an instruction that HLA test results indicating a better than 95-percent chance of paternity were not conclusive. Dr. Mullen stated numerous times that paternity tests could only establish a probability of fatherhood, further stated that the "test cannot absolutely prove someone is the father," and repeated the same thing when asked again on cross-examination. Additionally, the jury was clearly instructed that it could accept or reject Dr. Mullen's testimony interpreting the test results. Consequently, appellant has not shown that failure to give the requested instruction prejudiced him in any way.
After careful consideration, we conclude that this case was fairly tried and vigorously defended at both the trial and appellate levels. Accordingly, we affirm the conviction. We observe that appellant's counsel left no part of the State's case unchallenged and that the victim of the offense was subjected to extensive cross-examination. However, the weight of the evidence overwhelmingly demonstrated appellant's guilt, and supports the jury's verdict.
Accordingly, the judgment and sentence below are affirmed.
SMITH, C.J., concurs.
ERVIN, J., concurs in result.
NOTES
[1] Brooke was not the attorney who ultimately prosecuted the case.
[2] The victim did not testify that Brooke had told her not to name a father. Rather, she testified that Brooke told her mother. As appellant's counsel only asked Brooke at hearing whether he discussed it with the victim and never inquired about conversations with the mother, appellant has not shown that the State used false testimony.
[3] Section 924.33, Florida Statutes:

No judgment shall be reversed unless the appellate court is of the opinion after an examination of all the appeal papers, that error was committed which injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant.
State v. DiGuilio, 491 So.2d 1129, 1139 (Fla. 1986):
The question is whether there is a reasonable possibility that the error affected the verdict. The burden to show the error was harmless must remain on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.
[4] The trial court denied appellant's "relevance" objection to this testimony.
[5] The record reveals that a 95-percent probability is generally considered indicative of paternity.
[6] The victim described in detail the unusual manner in which appellant disrobed before committing the sexual battery. This description was quite similar to the description of appellant's sexual practices given by his former girlfriend.